Christopher Koch (24073637)
Chris Koch Law PLLC
1100 Lake Carolyn Parkway, Ste 2029
Irving, TX, 75039
972-302-8585
ck@klgroupsolutions.com


Attorney for Plaintiff

## IN THE UNITED STATES DISTRICT COURT
## DISTRICT OF ARIZONA

| | |
|---|---|
| Genetic Technological Innovations,<br>    A Delaware Corporation,<br><br>        Plaintiff,<br><br>v.<br><br><br><br><br>Vita Healthcare Group,<br>    A New Jersey limited liability company,<br>Heritage Consulting Group,<br>    A New Jersey limited liability company,<br>Medical Facilities of America,<br>    A Virginia Corporation,<br>Innovative Healthcare Management,<br>    A Virginia limited liability company,<br>Ira Birnbaum,<br>    A New York resident,<br>Hindy Spiegel,<br>    A New Jersey resident,<br><br>Jointly and Severally | No. CV-22-00836-PHX-GMS<br><br><br><br><br><br>**SECOND**<br>**AMENDED**<br> **COMPLAINT** |

Plaintiff, Genetic Technological Innovations, for its Second Amended Complaint against

Defendants, alleges as follows:

**Parties and Jurisdiction**

*GTI Second Amended Complaint*

1. Genetic Technological Innovations ("GTI") is a Delaware corporation with its principle corporate offices and laboratory in Maricopa County, Arizona. GTI provided laboratory services, including Covid 19 testing, to Defendants from its facility in Maricopa County.

2. Defendant Vita Healthcare ("Vita" or "VHG") is, upon information and belief, a New Jersey LLC, with its principal place of business in New Jersey. Every member of VHG is a New Jersey resident. Upon information and belief, Defendant acted on behalf and for the benefit of many of its owned or controlled subsidiaries which may or may not be independent legal entities, none of which are Arizona residents or citizens.

3. Defendant Heritage Consulting ("Heritage") is, upon information and belief, a New Jersey LLC, whose members are New Jersey residents. Upon information and belief, no shareholder of Heritage is an Arizona resident. Heritage contracted with GTI for testing services to be performed in Maricopa County, Arizona. Heritage committed intention acts expressly aimed at Arizona causing harm Heritage knew was likely to be suffered in Arizona.

4. Medical Facilities of America, Inc ("MFA") is, upon information and belief a Virginia corporation. MFA contracted with GTI for testing services to be performed in Maricopa County, Arizona. Upon information and belief, MFA acted on behalf and for the benefit of many of its owned or controlled subsidiaries which may or may not be independent legal entities, none of which are Arizona residents or citizens. MFA committed intentional acts expressly aimed at Arizona causing harm that it knew was likely to be suffered in Arizona.

5. Innovative Healthcare Management LLC ("Innovative") is, upon information and belief, a Virginia LLC whose members are Virginia and New York residents. Innovative

*GTI Second Amended Complaint*

contracted with GTI for testing services to be performed in Maricopa County, Arizona. Upon information and belief, Innovative acted on behalf and for the benefit of many of its owned or controlled subsidiaries which may or may not be independent legal entities, none of which are Arizona residents or citizens. Innovative committed intentional acts expressly aimed at Arizona causing harm that it knew was likely to be suffered in Arizona.

6. Ira Birnbaum is a New York resident. Birnbaum represented he is a principal and owner of Defendants Vita, MFA, Innovative and, accordingly, a principal or owner of any Vita, MFA, and Innovative affiliates or subsidiaries. Birnbaum negotiated and contracted with GTI for testing services to be performed in Maricopa County, Arizona and committed intentional acts expressly aimed at Arizona causing harm that Birnbaum knew was likely to be suffered in Arizona.

7. Hindy Spiegel is a New Jersey resident. Spiegel negotiated and contracted with GTI for testing services to be performed in Maricopa County, Arizona and committed intentional acts expressly aimed at Arizona causing harm that Birnbaum knew was likely to be suffered in Arizona.

8. The actions which form the basis for this suit occurred in Maricopa County, Arizona. Plaintiff performed all services for Defendants in Plaintiff's Arizona-based laboratory.

9. Defendants have sufficient contacts with Arizona, in part, through contracting for testing services with GTI in Arizona, such that they have purposefully availed themselves of the privilege of conducting business in Arizona by sending over 40,000 different blood samples at various times for testing to Arizona. Each of Defendants are responsible

directly for causing at least hundreds if not thousands of tests to be sent to GTI in Arizona for testing.

10. Plaintiff seeks damages in excess of $3 million USD.

11. This Court has jurisdiction over this action pursuant to 28 U.S. Code §1332 and 28 U.S. Code §2201.

12. This case entails an actual controversy within the court's jurisdiction.

13. Venue is proper in this district pursuant to 28 U.S. Code §1391.

14. Complete diversity exists in this action.

## General Allegations

15. Defendants, other than Heritage and Spiegel, own and operate various healthcare facilities, primarily in the northeast United States. GTI owns and operates a laboratory that does, among other things, diagnostic testing.

16. Vita, Birnbaum, Spiegel and Gordon Leisser negotiated an arrangement with GTI to perform Covid 19 and other diagnostic testing for employees and patients of Vita. For the purposes of this petition, "employees and patients of Vita" refers to all employees and patients of corporate defendants, all clinics owned, managed or controlled by corporate defendants and all clinics which submitted requests for diagnostic testing under the arrangement negotiated by Vita, Birnbaum, Spiegel and Leisser.

17. The Covid 19 testing for employees was mandated by law- health care employees were not permitted to enter the premises or treat patients without specified Covid 19 testing. Vita also, from time to time, requested additional testing for other third parties some related to Covid 19, some not.

18. GTI agreed to provide Covid 19 testing services for Defendants and their respective affiliates, subsidiaries and/or businesses  Vita specifically represented that all Covid 19 employee testing it desired was covered by employee insurance.  Vita represented and promised to pay for all tests it ordered which were ultimately not covered by third party payors. Vita further promised it was responsible for the payment of all tests ordered by any of its affiliates or subsidiaries.

19. Vita or its representatives identified the employees or third parties who were to be tested. Vita or its representatives submitted these tests to GTI by issuing a request for testing through an electronic patient portal.

20. Vita provided all the information relevant for the request for testing including patient name, demographics, personal information, available or potentially applicable third-party coverage and the type of testing requested.

21. GTI performed the tests and, based on instructions and information provided by Vita, GTI would assist Vita in seeking third-party payment/reimbursement for the tests.

22. Test results were entered into an electronic patient portal.  Each Vita affiliated entity (typically in this case the affiliated entities were skilled nursing facilities) had its own access to the portal where it could access only tests submitted by it in compliance with HIPAA, the federal Health Insurance Portability and Accountability Act.  Vita on the other hand has and had access to the portals of all of its affiliated entities.

23. Most of the tests requested by Vita and its affiliates under this arrangement were Covid 19 tests for employees.

*GTI Second Amended Complaint*

24. The testing requested and required by Vita of GTI came during the most intense times of the Covid 19 pandemic when testing capacity was overwhelmed and cost for testing at a premium.

25. During this period, the cost for the tests performed by Plaintiff for any employee covered by traditional third-party insurance (or who did not have insurance) was expected to be the rates established by the CARES Act and/or Medicare A for such testing, or $100.00 per test.

26. Vita agreed to pay normal "rack rates" for any other diagnostic test requested by its clinics.

27. Vita requested GTI to seek third party payment for the testing it requested, first through Medicare (if available) and second through potentially applicable insurance policies.

28. It turns out Vita misrepresented the insurance coverage status of the employees for which Vita arranged Covid 19 testing. Vita knew, or should have known, Vita and its related and affiliated entities were self-insured entities. Employees of self-insured entities were not covered under the CARES Act.

29. The Covid 19 and other tests for which GTI seeks payment were tests requested by Vita but which were denied reimbursement by all third parties. As such, the cost for the tests are Vita's responsibility.

30. The Covid 19 tests ordered by Vita were essential to the continued operation of its business. Without employee testing Vita would have had to shut down operations. The other testing ordered by Vita was simply necessary for the ordinary operations of its business.

31. Vita refused to pay for the tests it ordered and arranged for.

*GTI Second Amended Complaint*

32. After some discussion, GTI conditionally agreed to accept payment of a discounted rate for the tests Vita requested. This agreement was explicitly based on Defendants' acknowledgement and representation that Vita was responsible for payment for the tests ordered and their promise to promptly process and pay all outstanding invoices for testing within five months of the agreement.

33. Insomuch as the testing had already been done and Vita had already received the benefit of GTI's services, GTI's promise to conditionally accept a reduced payment in satisfaction of the debt was a promise not supported by consideration from Vita.

34. Vita stopped paying the agreed amounts almost immediately without explanation and refused to respond to requests and demands for payment.

35. Since Defendants' failed to promptly pay Vita was not entitled to subsequently negotiated discounted rate.

36. Plaintiff performed approximately 34,688 tests for Defendants pursuant to the agreement between the parties as follows.

37. Defendants do not contest the services were rendered and have never contended the services were not rendered.

38. There remains a balance due and owing for the tests of approximately $3,083,047.54

39. Months after stopping payment for no reason, Defendants fabricated a justification for its refusal to pay Plaintiff for services rendered. Spiegel/Heritage Consulting issued to GTI a "Hold Notice". Spiegel represents herself as CFO of Vita.  Heritage Consulting apparently employs or controlsthe finance and accounting personnel in Defendants' clinics in the northeast.  The hold notice, A copy of which is attached as Exhibit A, provides

*GTI Second Amended Complaint*

> *Please be advised that Vita Healthcare Group has recently learned that GTI is under investigation concerning its provision of services and for billing practices. Let this letter serve notice that*
> 1. *Vita Healthcare Group seeks indemnification from GTI for all legal and other costs associated with cooperation with such investigations.*
> 2. *Payments to GTI shall be suspending the pending the outcome.*

40. GTI is not and never had been under investigation concerning its provision of services or for billing practices.

41. Defendants' falsely claim the OIG subpoena justified non-payment as a pretext to conceal their own potentially illegal and improper relationship with the other subjects of the subpoena including AMSOnsite ("AMS") and Costal and others.

42. Defendants also falsely claim the OIG subpoena justified non-payment because, in reality, Birnbaum and/or Vita were experiencing financial difficulties and Birnbaum realized non-payment would financially benefit him personally. Vita had stopped making payments to GTI long before the "hold notice" issued and potential lenders (factoring companies) reached out to GTI seeking information regarding Vita's financial condition and bill payment history.

43. Regardless the motivation, an "investigation" or "request for information" from the OIG does not justify or excuse non-payment due for services rendered.

44. After issuing the "hold notice" Vita, Heritage, Birnbaum and Spiegel refused to communicate further with GTI and they instructed all facilities under their control and influence to not communicate with GTI and not process any payments for tests.

### **COUNT 1- BREACH OF CONTRACT (VITA, MFI, INNOVATIVE)**

45. Plaintiff restates and incorporates the prior allegations.

46. The agreement between the parties is a binding contract.

*GTI Second Amended Complaint*

47. Plaintiff performed its obligations under the contract. Defendants have breached the contract and refuse to pay for services rendered.

48. Plaintiff has been damaged as a result of that breach.

49. Arizona, A.R.S. section 12.341.01 provides that the prevailing party in a lawsuit may recover its attorney's fees in any action arising out of a contract.

## COUNT II – UNJUST ENRICHMENT (VITA, INNOVATIVE, MFI)

50. Plaintiff restates and incorporates the prior allegations.

51. Defendants contend they have no binding written agreement with GTI and, presumably, therefore that no contract exists between GTI and any of their subsidiaries and affiliates. MFA and Innovative are sister companies to Vita, all under common ownership of Defendant Birnbaum. Vita, MFA and Innovative all have some ownership, management or control interest in every nursing facility which ordered tests from GTI.

52. If no contract between the parties exists then GTI is entitled to payment on the theory of unjust enrichment.

53. GTI conferred a benefit on Vita, Innovative and MFA by providing testing results submitted by Vita, Innovative and MFA and their affiliated entities for diagnostic testing requested by those entities .Without the Covid 19 employee testing, Vita, Innovative and MFA would have had to cease its health care operations at all of their subsidiary and affiliated health care operations.

54. The benefit to Vita, MFA and Innovative occurred at GTI's expense. GTI provided substantial administrative support seeking reimbursement for the testing and also utilized its limited laboratory services to complete the testing.

55. It would unjust to allow Vita, Innovative and MFA to keep the benefit of the diagnostic testing without paying for it.

### COUNT III - QUANTUM MERUIT (VITA, INNOVATIVE, MFI)

56. Plaintiff restates and incorporates the prior allegations.

57. Vita contends it has no binding written agreement with GTI. and, presumably, therefore that no contract exists between GTI and any of its subsidiaries and affiliates, including but not limited to MFA and Innovative.

58. If no contract between the parties exists then GTI is entitled to payment on the theory of unjust enrichment and measuring damages under the theory of *quantum meruit*.

59. The recovery of *quantum meruit* is based on the value of the services rendered.

60. The value of services rendered by GTI was the reimbursement rate for Covid 19 testing established by CARES Act and/or Medicare A. The value of services rendered by GTI for non-Covid 19 tests is the reasonable market rack rate it charges for such tests.

### COUNT IV- TORTIOUS INTERFERENCE WITH CONTRACT AND WITH BUSINESS EXPECTANCY
### (BIRNBAUM, SPIEGEL, VITA, HERITAGE CONSULTING)

61. Plaintiff restates and incorporates the prior allegations.

62. GTI has a valid and binding contract and/or business expectancy with the subsidiaries or affiliated entities of Vita. Vita now claims these entities are not, in fact, subsidiaries and affiliates but are independent entities not under common ownership or control of Vita.

63. Vita had actual knowledge these entities submitted tests kits to GTI for process and that GTI expected payment for providing these services.

*GTI Second Amended Complaint*

64. Birnbaum, Spiegel, Vita and Heritage intentionally and improperly interfered with GTI's contract and/or business expectancy with these entities and instructed them to not pay GTI and not communicate with GTI directly.

65. GTI was damaged by this wrongful conduct;

### COUNT V- FRAUD/FRAUDULENT INDUCEMENT
### (BIRNBAUM, SPIEGEL, VITA)

66. Plaintiff restates and incorporates the prior allegations.

67. Birnbaum, Spiegel and Vita made specific, material representations to GTI which representations they knew to be false when made including:

   a. Vita itself was entering into a binding contractual commitment with GTI for diagnostic testing;

   b. Vita was responsible for payment for any testing requested by any entity under Vita's agreement with GTI;

   c. Vita controlled or owned all entities which Vita expected would request testing from GTI;

   d. Vita was contracting on behalf of its skilled facilities (not its "clients") with GTI and it had the authority to do bind and direct the conduct of the facilities;

   e. Vita "arranged" for and was responsible for the testing it and the facilities requested;

   f. Vita was responsible for providing to GTI the directions to, and all necessary substantiation for, testing to be billed to third party payors including Medicare and Medicaid;

   g. Vita and its affiliates would comply with all state and federal laws with respect to diagnostic testing;

*GTI Second Amended Complaint*

    h. The employees which required Covid 19 testing were covered by the CARES Act;

    i. Vita was solely responsible for the anti-microbial preventive testing program it entered into with AMS and Costal and that it decided to terminate the relationship with AMS and Costal; and

    j. Other material misrepresentations.

68. Birnbaum, Spiegel, Vita intended GTI to reasonably act on these false representations (which GTI did not know to be false) and GTI in fact had a right to rely on these representations and did rely on them to their detriment.

69. Defendants have now affirmatively denied the truth of all their statements, thus establishing the statements were false when made.

70. GTI was damaged as result of its reliance on these representations.

### COUNT VI – CONSPIRACY (BIRNBAUM, VITA, SPIEGEL, HERITAGE)

71. Plaintiff restates and incorporates the prior allegations.

72. Birnbaum and Spiegel engaged in a scheme to deprive GTI of funds by fraudulent means and knowingly aided one another to commit unlawful designed to improperly enrich themselves.

73. GTI suffered substantial damages as a result defendants' actions.

### COUNT VII – AIDING AND ABETTING (BIRNBAUM, VITA, SPIEGEL, HERITAGE)

74. Plaintiff restates and incorporates the prior allegations.

75. Defendants aided and abetted each other in perpetuating a fraud against GTI and are therefore each liable individually for the resulting harm to GTI.

### COUNT VIII - BREACH OF DUTY OF GOOD FAITH (VITA)

76. Plaintiff restates and incorporates the prior allegations.

*GTI Second Amended Complaint*

77. The law implies a covenant of good faith and fair dealing in every contract. The duty arises by virtue of a contractual relationship. The essence of that duty is that neither party will act to impair the right of the other to receive the benefits which flow from their agreement or contractual relationship.

78. Vita breached its duty by behaving unfairly, unreasonably and withholding payment for improper reasons.

79. GTI has been damages as a result of Vita's actions

## COUNT IX- DECLARATORY RELIEF ARS §12-1832

80. Plaintiff restates and incorporates the prior allegations.

81. A justiciable controversy exists between the parties.

82. Plaintiff requests the court to determine the parties' respective rights under the contract between them, including, but not limited to whether the "Hold Notice" issued by Vita creates an indefinite to non-payment.

## COUNT IX – PUNITIVE DAMAGES (VITA, BIRNBAUM)

83. Plaintiff restates and incorporates the prior allegations.

84. Vita has engaged in aggravated, wanton, reckless or malicious wrongdoing.

85. Vita and Birnbaum have acted with an evil hand and guided by an evil heart with clear intention to injure, defraud and deliberately interfere with GTI's legal rights.

WHEREFORE,

Plaintiff prays for Judgement from Defendants as follows:

(a) Damages in the amount of $3,083,047.54 plus pre and post judgment interest at the prevailing statutory rate;

*GTI Second Amended Complaint*

(b) That defendants are jointly and severally liable for the damages,

(c) All costs and reasonable attorney's fees; and

(d) Such further relief, both general and special, at law and in equity, as the Court deems appropriate.

Respectfully Submitted this 27rd Day of March, 2023

By:  s/Christopher Koch
Christopher Koch
Attorney for Plaintiff

Christopher Koch
Chris Koch Law PLLC
2727 LBJ Fwy, Ste 562
Farmers Branch, TX
972-302-8585
ck@klgroupsolutions.com

*GTI Second Amended Complaint*